# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

ROBERT BETHEL,

        Plaintiff,        :      Case No. 2:20-cv-5275

- vs -

        District Judge Edmund A. Sargus, Jr.
        Magistrate Judge Michael R. Merz

TIMOTHY SHOOP, Warden,
  Chillicothe Correctional Institution, *et al.*,
                                                    :
        Defendants.

## REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS

This case is before the Court on the Defendants' Motion to Dismiss (Motion, ECF No. 6). Plaintiff opposes the Motion (ECF No. 12) and Defendants have failed to file a reply in support, despite the Court's Order to do so (ECF No. 13).

Plaintiff Robert Bethel is an inmate Chillicothe Correctional Institution ("CCI"), capitally convicted and housed on death row. Bethel filed this action *pro se* under 42 U.S.C. § 1983. He has sued Timothy Shoop, in his official capacity as Warden of CCI, and Brandie Smith, both in her individual capacity and her official capacity as Lieutenant and Mailroom Supervisor at CCI (Complaint, ECF No. 1, PageID 1).

Plaintiff Bethel "alleges that on several occasions his electronic mail was censored and delayed by Defendant Smith for specific language used in the mail. Plaintiff asserts this censorship is a violation of his [F]irst [A]mendment right to freedom of speech." *Id*. at Page 71.

1

**I.     Legal Standards**

   **A.     Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the opposing party has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007), citing *Carver v. Bunch,* 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh,* 487 F.3d at 476).

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 570 (2007). Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. Legal conclusions "must be supported by well-pleaded factual allegations ... [that] plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S.662, 679 (2009). "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not

bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986).

B.   ***Pro Se*** **Pleadings**

Allegations drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. *Fed. Exp. Corp. v. Holowecki,* 552 US. 389, 402 (2008). Although *pro se* pleadings are to be liberally construed, this court is not required to guess at the nature of an argument. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

C.   **Individual and Official Capacity Suits**

Governmental officials may be held personally liable for damages under 42 U.S.C. § 1983 based upon actions taken in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (holding state officials sued in their individual capacities are "persons" within the meaning of section 1983). Generally, plaintiffs must designate in which capacity they are suing defendants; if not, by operation of law, defendants are deemed sued in their official capacities. *Wells,* 891 F.2d at 592-94. Suing a public official in his official capacity for acts performed within the scope of his authority is equivalent to suing the governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

D.   **Qualified Immunity**

"The doctrine of qualified immunity shields officials from civil liability 'so long as their conduct does not violate clearly established statutory and constitutional rights which a reasonable

person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015), quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Normally, "clearly established law" means binding precedent of United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, "the district court itself, or case law from other circuits which is directly on point." *Barrett v. Harrington,* 130 F.3d 246, 264 (6th Cir. 1997), citing *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir. 1994); *Cameron v. Seitz*, 38 F.3d 264, 272-73 (6th Cir. 1994). For the right to be clearly established, "existing precedent must have placed the statutory or constitutional right question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Qualified "immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). To establish qualified immunity, the officials bear the burden of presenting facts which, if true, would establish that they were acting within the scope of their discretionary authority. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). The burden then shifts to plaintiff to establish that defendant violated a right so clearly established that any official in his position would have clearly understood he was under a duty to refrain from such conduct. *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006).

Qualified immunity analysis has two prongs: (1) determining whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right; and (2) deciding if the right was clearly established at the time the officer acted. Trial judges now permitted to use their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (citations omitted).

II.　　Analysis

　　A.　　**Smith is not entitled to Qualified Immunity at this stage**

Defendants argue that there is not clearly established law that would have reasonably put Defendants on notice that their conduct was unlawful (Motion, ECF No. 6, PageID 82, quoting *Mullenix*, 577 U.S. at 12). In other words, even if Smith had unreasonably censored Bethel's mail, such censorship was within the "breathing room to make reasonable but mistaken judgments about open legal questions" afforded by qualified immunity. *Id.*, quoting *al-Kidd*, 563 U.S. at 743.

Yet, it has been clearly established for more than thirty years that restrictions on prisoner communication must be "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989), quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987). Reasonable censorship of communications include "escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion," *Id.* at 412, citing *Procunier v. Martinez*, 416 U.S. 396, 412-13 (1974), *overruled in part by Thornburgh*, 490 U.S. 401, none of which is alleged in Bethel's Complaint. Rather, Bethel is alleging in part that the goal of Smith's censorship was to obscure CCI's allegedly racist behaviors and mishandling of an inmate suicide (Compl., ECF No. 1, PageID 11, 15, ¶¶ 32-35, 45). The undersigned cannot conclude that these areas are sufficiently related to legitimate penological interests to justify Smith's alleged censorship. Nor can the undersigned reasonably conclude that a prohibition on censoring potentially embarrassing details about CCI was not clearly established law of which a reasonable person would have been aware. Thus, at this stage, Bethel has shown that Smith is not entitled to qualified immunity.

　　B.　　**Bethel has set forth a valid First Amendment free speech claim**

Bethel claims that he was unduly restricted from communicating with counsel, Rachel

5

Troutman, and his family by his electronic mail sent through the Jpay system being censored without legitimate penological interest, and that this restriction violated his First Amendment right to free speech (Compl., ECF No. 1, PageID 21, ¶ 77, citing *id*. at PageID 15, 17, ¶¶ 49-52, 56-58). For the same reasons that Smith is not entitled to qualified immunity, the undersigned concludes that Bethel has set forth a plausible First Amendment free speech claim.

      C.      **Bethel has set forth a valid First Amendment retaliation claim**

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The protected action undertaken was Bethel's criticism of Smith and CCI's censorship practice. The undersigned's determination *infra* that Bethel has set out a plausible free speech claim is sufficient to meet the first element at the motion to dismiss stage.

Defendants claim that the only adverse actions taken against him were temporary kiosk restrictions and delays in sending electronic mail; these minor inconveniences, Defendants argue, would not deter a person of ordinary firmness from continuing to send emails critical of CCI (Motion, ECF No. 6, PageID 79-80, citing Compl., ECF No. 1, PageID 15, 17, 19, 21, ¶¶ 43-44, 46, 54, 58, 65-66, 68-69, 73-74). Yet, that is not the only adverse action alleged by Plaintiff. Rather, he claims to have been punished with a "disrespect" violation, which not only carried with it temporary loss of electronic communication, but the potential of being placed in a restrictive housing assignment for up to fourteen days (Memo. in Opp., ECF No. 12, PageID 114, citing

Compl., ECF No. 1, PageID 19, ¶ 65-67, Ohio Admin. Code § 5120-9-06 – 5120-9-09[1]). Bethel is correct that the possibility of future sanctions can be—and at this stage, is—sufficiently chilling to constitute an adverse action. *Id*. at PageID 114-15, quoting *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004); citing Compl., ECF No. 1, PageID 21, ¶ 74. Further, the complaint alleges that Smith issued the "disrespect" sanction as a direct result of his protected conduct, and alleges that Smith told him that he would be sanctioned more if he continued to criticize CCI. *Id*. at PageID 115, citing Compl., ECF No. 1, PageID 15, 19, ¶¶ 44-45, 49-50, 65-67. These allegations are sufficient to allege a connection between the protected conduct and adverse action.

Finally, Defendants argue that "Plaintiff's conviction for a prison infraction is fatal to his retaliation claim," since "'[a] finding of guilt based upon some evidence of a violation of prison rules essentially checkmates a retaliation claim.'" (Motion, ECF No. 6, PageID 78, quoting *Lewis v. Turner*, 16 F. App'x 302, 304 (6th Cir. 2001)). However, as Bethel points out, the Sixth Circuit has since *Lewis* rejected the "checkmate doctrine." (Memo. in Opp., ECF No. 12, PageID 116, quoting *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018)). Having set forth a plausible *prima facie* retaliation claim, Bethel should be allowed to proceed with that claim.

### D. Shoop may be substituted if he is an improper party

Defendants argue that Shoop is not a proper party, as *respondeat superior* is not a basis for liability under 42 U.S.C. § 1983 and Bethel does not allege any wrongdoing on the part of Shoop (Motion, ECF No. 6, PageID 75-77 (citations omitted)). In his memorandum *contra*, Bethel states that he is not pursuing a *respondeat superior* claim against Shoop, or indeed, any claim at all

---

[1] A court may consider public records without converting the motion to dismiss into a summary judgment motion. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 n.2 (2002).

against him individually. Rather, he has only raised a claim against Shoop in his official capacity, which is in all aspects but name, a claim against the agency (Memo. in Opp., ECF No. 12, PageID 120, citing *Graham*, 473 U.S. at 165-66). Naming Shoop, as the Warden, as a Defendant is the proper means by which claims against CCI may be raised.

Defendants argue that Bethel's claim for injunctive relief fails because he has failed to name the agency subject to the prayed-for relief—the Ohio Department of Rehabilitation and Corrections ("ODRC"), which is not a party to this suit, "nor has he included anyone who in their official capacity would be the equivalent of the entity. Moreover, the relevant regulation that governs the mail, including electronic mail, is O.A.C. [Ohio Administrative Code §] 5120-9-18, not an ODRC rule or regulation." (Motion, ECF No. 6, PageID 81). Even assuming that the wrong entity has been sued through Bethel's naming Smith and Shoop in their official capacities as Defendants, that is not fatal to his claims at the motion to dismiss stage. Rather, Bethel may substitute, for Shoop or Smith in their official capacities, ODRC Director Annette Chambers-Smith in her official capacity as a Defendant; such substitution would relate back to the original complaint. FED.R.CIV.P. 15(c)(1)(C). If there is another state entity which is responsible for administering the relevant regulation, then Defendants may disclose that information under FED.R.CIV.P. 26(a)(1), or Bethel may take discovery, to identify that entity.

### III. Conclusion

For the foregoing reasons, it is recommended that Defendants' Motion to Dismiss (ECF No. 6) be DENIED and Bethel's claims proceed to discovery, adding or substituting ODRC Director Chambers-Smith as a Defendant or the state entity responsible for promulgating OAC §

5120-9-18 where appropriate.

May 24, 2021.

s/ *Michael R. Merz*<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because Plaintiff is being served by mail, his time to object is extended by three days. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #