# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

ROBERT BETHEL,

              Plaintiff

      v.

BRANDIE SMITH, *et al.*,

              Defendants.

          :   Case No. 2:20-cv-5275

          :   District Judge Edmund A. Sargus, Jr.
           Magistrate Judge Michael R. Merz

          :

# REPORT AND RECOMMENDATIONS

This *pro se* § 1983 case is before the Court on Plaintiff Robert Bethel's Motion for Summary Judgment (ECF No. 22). Defendants Brandie Smith, in her individual capacity, and Timothy Shoop, Warden of the Chillicothe Correctional Institution ("CCI"), in his official capacity, filed a memorandum *contra* (ECF No. 23), and Plaintiff has replied (Reply, ECF No. 26). For the reasons set forth below, it is recommended that Plaintiff's Motion be DENIED.

## I.    Factual Background and Procedural History

Plaintiff, a capital inmate at CCI, used the JPay system at CCI to communicate electronically with his aunt and Rachel Troutman, the attorney representing him in his petition for writ of *habeas corpus* (Barbara Harper Decl., ECF No. 22-1, PageID 212, ¶ 4; Bethel Decl., ECF No. 22-1, PageID 215, ¶¶ 6, 9). In July 2020, Plaintiff attempted to send to Troutman a series of nine emails that contained inflammatory language, calling CCI staff members "racist assholes," supporters of the Ku Klux Klan, and "real gangsters" (Pltf. Ex. 4, ECF No. 22-1, PageID 221-29).

Plaintiff was notified that his emails were being censored for, among other reasons, "[u]se of racial slur words and wrongful allegations of [*sic*] CCI staff." (Pltf. Ex. 5, ECF No. 22-1, PageID 230-38). The emails were eventually sent without redaction to Troutman on July 29, 2020 (Pltf. Ex. 6, PageID 239).

On July 19, 2020, Plaintiff was issued a conduct report by Smith, the CCI mailroom supervisor, for violating Rules 26 and 61, "Disrespect to an officer, staff member, visitor or other inmate; Any violation of any published Institutional rules, regulations or procedures." (Pltf. Ex. 7, ECF No. 22-1, PageID 241). Smith stated that: "Inmate continues to make false allegations against CCI staff and appears to be 'testing' the JPay rules and regulations on what will be censored or sent to security." *Id*. at PageID 244. Plaintiff was eventually suspended from using JPay for thirty days (Bethel Decl., ECF No. 22-1, PageID 216, ¶ 17). On September 1, 2020, Plaintiff sent a "kite" to Smith, asking her if he "would be subject to further conduct reports for voicing criticisms against CCI staff in outgoing emails." (Pltf. Ex. 8, ECF No. 22-1, PageID 246). Smith responded the next day: "I am not the only one who views JPAY. So you may be given another conduct report again by someone else." *Id*. Plaintiff resumed using JPay but ceased criticizing CCI staff in messages (Pltf. Exs. 9-10, ECF No. 22-1, PageID 247-48).

Plaintiff filed the instant lawsuit on October 8, 2020 (Complaint, ECF No. 1). On December 18, 2020, Defendants moved to dismiss the complaint in its entirety (Motion, ECF No. 6). On July 9, 2021, the Court adopted the undersigned's Report and Recommendations, dismissing official capacity claims against Smith, but allowing the remainder of the lawsuit (individual capacity claims against Smith and official capacity claims against Shoop) to proceed (Order, ECF No. 18, PageID 173-74, citing Report, ECF No. 14). Plaintiff filed the instant Motion on August 2, 2021 (ECF No. 22).

## II.     Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991).  Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Rule 56 requires the nonmoving party to go beyond the (unverified) pleadings and present some type of evidentiary material in support of its position.  *Celotex,* 477 U.S. at 324.  "The [non-movant] must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the [non-movant]."  *Michigan Prot.* & *Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

3

*Anderson,* 477 U.S. at 248.  In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party.  *Id.* at 255.  If the parties present conflicting evidence, a court may not decide which evidence to believe.  Credibility determinations must be left to the fact-finder.  10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE CIVIL 3D, § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties.  Fed.R.Civ.P. 56(c)(3).  "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  *lnterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989).  However, the court may also consider other properly presented materials in the record.  Fed. R. Civ. P. 56(c)(3).

## III.    Analysis

### A.    Plaintiff is not entitled to summary judgment on retaliation claim

> A retaliation claim essentially entails three elements:  (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  Plaintiff claims that while his "outgoing emails may have been a potential overstatement of CCI's purported censorship practices, or even defamatory or obscene, [the language in the emails] nevertheless was protected speech." (Motion, ECF No. 22, PageID 198, citing *Procunier v. Martinez*, 416 U.S. 396, 399-400, 413-16 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)).  Further, Plaintiff argues, Smith cannot present evidence that the censorship was motivated by a valid penological

interest; thus, Plaintiff has met the first element.  *Id.*, citing *Thornburgh*, 490 U.S. at 412.  As to the second element, Plaintiff claims that the potential punishment for future infractions—being placed in administrative segregation—was sufficient to deter a person of ordinary firmness from continuing to criticize CCI staff.  *Id.* at PageID 199, quoting *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); citing Ohio Admin. Code §§ 5120-9-07(F)(5)(f), 5120-9-09(A)(4).  Finally, Plaintiff argues that the record shows that Plaintiff engaged in criticism of CCI, he was disciplined by Smith because of it, and was warned that if he did it again, he may be subject to future discipline. This is at least a plausible causal chain, he claims, to satisfy the third element.  *Id.* at PageID 200-01, citing *Ctr. for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 371-72 (6th Cir. 2011).

Defendants focus on the third element.  They claim that Plaintiff was not written up because of the exercise of his free speech rights, but because he violated prison administrative rules (Memo. in Opp., ECF No. 23, PageID 258-59, citing Ohio Admin. Code § 5120-9-18; Smith Decl., ECF No. 23-2, PageID 273, ¶ 15).  Thus, there is a genuine factual dispute as to whether there is a causal connection between Plaintiff's purported protected conduct and the disciplinary actions taken against him.  The resolution of that question rests on a credibility determination between Plaintiff and Smith; such resolution must be made by the trier of fact.  Accordingly, Plaintiff's Motion should be denied as to his retaliation claim.

### B.    Plaintiff is not entitled to summary judgment on free speech claim

For the same reasons that Plaintiff's Motion should be denied as to his retaliation claim, the Motion should be denied as to his free speech claim.  Also, the undersigned notes that there is a genuine issue of material fact as to whether one of the adverse actions complained of in the free speech claim—censorship of Plaintiff's JPay messages—actually occurred (*See, e.g.*, Motion, ECF

No. 22, PageID 201 (Plaintiff's argument that messages were censored); Memo. in Opp., ECF No. 23, PageID 263, citing Plaintiff's Ex. 6, ECF No. 22-1, PageID 239 (Defendants noting that all JPay messages were eventually released without redaction or alteration)). Similarly, there is a dispute as to whether Smith was acting in furtherance of a valid penological interest (rules violations) (*See, e.g.*, Memo. in Opp., ECF No. 23, PageID 263, citing Smith Decl., ECF No. 23-2; Reply, ECF No. 26, PageID 288-89). Finally, there is a dispute as to whether the thirty-day restriction on JPay use, during which time Plaintiff was allowed to communicate via regular mail, actually constituted censorship (*See, e.g.*, Memo. in Opp., ECF No. 23, PageID 263-64; Smith Decl., ECF No. 23-2, PageID 273, ¶ 16; Reply, ECF No. 26, PageID 289-90). Again, these are disputes that must be resolved by the trier of fact. Accordingly, Plaintiff's Motion should be denied as to his free speech claim as well.

### C.    Smith is not entitled to qualified immunity

In their memorandum *contra*, Defendants assert that "Smith enjoys qualified immunity." (Memo. in Opp., ECF No. 23, PageID 261; *see also* Answer, ECF No. 21, PageID 185 (raising qualified immunity as an affirmative defense)). "The doctrine of qualified immunity shields officials from civil liability 'so long as their conduct does not violate clearly established statutory and constitutional rights which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015), quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Normally, "clearly established law" means binding precedent of United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, "the district court itself, or case law from other circuits which is directly on point." *Barrett v. Harrington,* 130 F.3d 246, 264 (6th Cir. 1997), citing *Bush v. Rauch,* 38 F.3d 842, 848 (6th Cir. 1994); *Cameron v. Seitz,*

38 F.3d 264, 272-73 (6th Cir. 1994). For the right to be clearly established, "existing precedent must have placed the statutory or constitutional right question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

To establish qualified immunity, the officials bear the burden "of presenting facts which, if true, would establish that they were acting within the scope of their discretionary authority." *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). The burden then shifts to plaintiff to establish that defendant violated a right so clearly established that any official in his position would have clearly understood he was under a duty to refrain from such conduct. *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006).

Qualified immunity analysis has two prongs: (1) determining whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right; and (2) deciding if the right was clearly established at the time the officer acted. Trial judges are now permitted to use their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson*, 555 U.S. at 232, 236.

There is no dispute that Smith acted in her discretionary authority. Thus, the burden shifts to Plaintiff to show that Smith violated a clearly established right. Plaintiff has designated sufficient evidence that the adverse action may have been taken in retaliation for his exercise of free speech. Further, the right of a prisoner not to be retaliated against in response to exercising his First Amendment rights was clearly established at the time Smith issued the conduct report and at the time the JPay suspension was issued. *See Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018), citing *Bell v. Johnson*, 308 F.3d 594, 612 (6th Cir. 2002) ("We have made clear that a prison

7

officer may not undertake adverse actions in retaliation for a prisoner's exercise of his First Amendment rights."). Thus, Smith is not entitled to qualified immunity on the retaliation claim.

Moreover, the right to non-interference with communication was clearly established at the time that Plaintiff's JPay messages were delayed. Plaintiff directs the Court to *Brooks v. Andolina*, in which the Third Circuit rejected a qualified immunity claim, stating that it was clearly established that prison officials could not interfere with an inmate's exercising his free speech rights through written communication, even if (as in that case and the instant case) the communications were eventually released uncensored (Motion, ECF No. 22, PageID 206-07, citing *Procunier*, 416 U.S. at 413; *Brooks*, 826 F.2d 1266, 1267-69 (3rd Cir. 1987)). Even though *Brooks* is out-of-Circuit, it is directly on point. Thus, it can be considered clearly established law. *Barrett*, 130 F.3d at 264. In both instances, the prisoner received a misconduct report from the individual defendant as a result of the contents of his written communication. Moreover, one of the reasons that the qualified immunity defense was denied was that "[a]t no time during the disciplinary proceedings did the prison officials allege that Brooks's letter presented a threat to prison security." *Brooks*, 826 F.3d at 1268. Similarly, Smith concedes that there were no security concerns in Plaintiff's emails, which is why they were released to Troutman. Smith Decl., ECF No. 23-2, PageID 273, ¶ 12. Thus, in the light most favorable to Plaintiff, the disciplinary action taken against him—issuance of the conduct report—violated his clearly established rights. *Brooks*, 826 F.2d at 1268-69. Smith should not receive qualified immunity on Plaintiff's free speech claim.

### D.     Plaintiff is not entitled to damages at this juncture

Plaintiff argues that he is entitled to declaratory and injunctive relief and nominal, presumed, and punitive damages (Motion, ECF No. 22, PageID 207). Defendants dispute

Plaintiff's entitlement to injunctive relief (Memo. in Opp., ECF No. 23, PageID 264-65). As Plaintiff should not receive judgment in his favor at this point, the undersigned need not consider the propriety of Plaintiff's damages requests.

## IV. Conclusion

For the foregoing reasons, it is recommended that Plaintiff's Motion for Summary Judgment (ECF No. 22) be DENIED. Plaintiff's individual capacity claims against Smith and official capacity claims against Shoop should proceed to trial.

October 4, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.