# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

ROBERT BETHEL,

    Plaintiff

  v.

BRANDIE SMITH, *et al.*,

    Defendants.

: Case No. 2:20-cv-5275

: District Judge Edmund A. Sargus, Jr.
: Magistrate Judge Michael R. Merz

:

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This *pro se* § 1983 case is before the Court on Plaintiff Robert Bethel's Motion for Summary Judgment (ECF No. 22). After the undersigned issued a Report and Recommendations recommending that Plaintiff's Motion be denied (ECF No. 27), both Plaintiff and Defendants Brandie Smith, in her individual capacity, and Timothy Shoop, in his official capacity as the Warden of the Chillicothe Correctional Institution ("CCI"), filed Objections (ECF Nos. 33-34). In light of the Objections, District Judge Sargus has recommitted the matter to the undersigned for further analysis (Order, ECF No. 39.) For the reasons set forth below, it is recommended that Plaintiff's Objections be OVERRULED, Defendant's Objections be SUSTAINED, Plaintiff's Motion be DENIED, and Defendant Smith's request for qualified immunity be GRANTED.

I.     **Factual Background and Procedural History**

The parties do not object to the factual background and procedural history set forth in the initial Report (ECF No. 27, PageID 300-01).

## II. Legal Standards

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991). Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rule 56 requires the nonmoving party to go beyond the (unverified) pleadings and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324. "The [non-movant] must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the [non-movant]." *Michigan Prot. & Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson,* 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE CIVIL 3D, § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed.R.Civ.P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *lnterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989). However, the court may also consider other properly presented materials in the record. Fed.R.Civ.P. 56(c)(3).

### B. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability 'so long as their conduct does not violate clearly established statutory and constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015), quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Normally, "clearly established law" means binding precedent of United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, "the district court itself, or case law from other circuits which is directly on point." *Barrett v. Harrington,* 130 F.3d 246, 264 (6th Cir. 1997), citing *Bush v. Rauch,* 38 F.3d 842, 848 (6th Cir. 1994); *Cameron v. Seitz*, 38 F.3d 264, 272-73 (6th Cir. 1994). For the right to be clearly established, "existing precedent must have placed the statutory or constitutional right question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741

(2011).

To establish qualified immunity, the officials bear the burden "of presenting facts which, if true, would establish that they were acting within the scope of their discretionary authority." *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). The burden then shifts to plaintiff to establish that defendant violated a right so clearly established that any official in his position would have clearly understood he was under a duty to refrain from such conduct. *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006).

Qualified immunity analysis has two prongs: (1) determining whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right; and (2) deciding if the right was clearly established at the time the officer acted. Trial judges are permitted to use their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson*, 555 U.S. at 232, 236.

III.     Analysis

    A.     **Qualified Immunity**

In the Report, the undersigned concluded that there was a clearly established right to non-interference with written communication at the time that Plaintiff's JPay messages were delayed (ECF No. 27, PageID 307, citing *Brooks v. Andolina*, 826 F.2d 1266, 1267-69 (3d Cir. 1987)). Defendants argue that *Brooks* is distinguishable because it dealt with "written communication in the traditional sense—regular mail coming into and out of the penal institution. The case at bar revolves around electronic mail, sent via a privately-owned system called JPay that is a privilege

4

extended to prisoners per ODRC policy." (Def. Obj., ECF No. 34, PageID 336). As it is not clearly established that the right to receive electronic mail is as broad as the right to receive regular mail, Smith is entitled to qualified immunity. (*Id*. at PageID 336-37, citing *Miles v. Scanlon*, No. 1:21-cv-74, 2021 U.S. Dist. LEXIS 86556, *12-13, n.3 (W.D. Mich. May 6, 2021)).

Plaintiff, in turn, argues it is *Miles* that is inapposite, as it pertained not to an email message, but scanned excerpts from a book received in violation of the prison's rule that only books from publishers may be sent to the prison (Pltf. Resp., ECF No. 38, PageID 347, citing *Miles*, 2021 U.S. Dist. LEXIS 86556, at *2.) Further, the *Miles* court reiterated the First Amendment right to mail and to receive the information in the email, even if not the email itself. (*Id.* at PageID 348, citing 2021 U.S. Dist. LEXIS 86556 at *12-14 nn.3-4.) "As such, contrary to defendants' assertions, the lack of right to electronic mail, does not undermine the Magistrate Judge's reliance on clearly established law that addressed the specific facts of plaintiff's claims, in denying qualified immunity." (*Id*., citing Report, ECF No. 27, PageID 306-07.)

Even accepting Plaintiff's assertions as true, he falls short of showing that the right to electronic communication was clearly established at the time the JPay messages were delayed. As Defendants point out, *Brooks* did not— and could not, given that it was published in 1987—deal with electronic communication. Thus, there is no caselaw supporting Plaintiff's assertion that email and regular mail are entitled to the same First Amendment protections. Even if *Miles* were to stand for that proposition, it is an unpublished, out-of-state, district court decision; in other words, it is not a case upon which this Court can find that a right was clearly established. Absent such a showing, Smith should be granted qualified immunity.

5

### B. Whether Plaintiff engaged in protected conduct

In his Objections, Plaintiff claims that the undersigned "found it to be a factual dispute as to whether [P]laintiff's outgoing emails constituted protected conduct under the First Amendment; or instead, were a prison rule infraction under O.A.C. § 5120-9-06." (Pltf. Objs., ECF No. 33, PageID 316.) Plaintiff argues that "[t]his is wrong. Whether [P]laintiff's emails are protected under the First Amendment; is not a question of fact determined by a jury's assessment of a party's 'credibility.'" (*Id.*) In their Response, "Defendants agree that this is a question of law, but disagree that there is a clearly established right to email communications without interference by institutional staff." (Def. Resp., ECF No. 37, PageID 344.)

The undersigned did not state that it was a factual dispute as to whether Plaintiff's emails constituted protected conduct. Rather, the undersigned assumed *arguendo* that they did and instead concluded that there was a factual dispute as to Defendants' motivation in sanctioning Plaintiff—whether in retaliation for exercising his free speech rights or for supposedly violating prison administrative rules (Report, ECF No. 27, PageID 304.) In other words, it is *Defendants'* credibility, not *Plaintiff's*, that is at issue. As there was a material dispute of fact as to the third element of a retaliation claim, *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), summary judgment is inappropriate (Report, ECF No. 27, PageID 304.) Plaintiff's motion for summary judgment in his favor on the retaliation claim should be denied.

### C. Distinguishing between sanctions for engaging in protected conduct protected conduct and for a rule rule violation

Plaintiff claims that "[t]he Magistrate Judge found defendants['] claim that the Conduct Report was issued for committing a rule infraction, created a genuine dispute of the facts. Summary

judgment was thus not appropriate, because '[t]he resolution of that question rests on the credibility between [the parties].'" (Pltf. Objs., ECF No. 33, PageID 319, quoting Report, ECF No. 27, PageID 304.) Plaintiff argues that this was erroneous, because, as a matter of law, he could not have committed the rules infraction he was found to have committed. (*Id*.) The rule in question, Rule 26 of Ohio Admin. Code § 5120-9-06(C), prohibits disrespect to a prison officer or staff member in communication. (*Id*.) As Plaintiff only directed his communications to a third party outside the prison, he claims that he could not have disrespected any prison employee. (*Id*. at PageID 320, citing Reply, ECF No. 26, PageID 282-83.) The only way that he could be found to have violated Rule 26 would be to read words into the definition that expand the scope of "disrespect *to*" a prison employee, which is impermissible under rules of statutory construction. (*Id*. at PageID 320-21, citing *Bevan v. Assocs., LPA v. Yost*, 929 F.3d 366, 375 (6th Cir. 2019); *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F. 2d 1362, 1365 (6th Cir. 1984).)

Plaintiff further argues that there is no credibility determination to be made, as the communications are protected speech as a matter of law (Pltf. Objs., ECF No. 33, PageID 321-22, citing *Bacon v. Phelps* 961 F.3d 533, 543-44 (2d Cir. 2020); *McNamara v. Moody,* 606 F.2d 621, 624 (5th Cir. 1979); *Bressman v. Farrier,* 825 F. Supp. 231, 236 (N.D. Iowa, 1992).) Defendants counter that all the cases Plaintiff cites pertain to hard copy mail, whereas the Ohio Department of Rehabilitation and Corrections ("ODRC") made "clear that email communications are monitored and will continue to be monitored. Thus, the reason email communications are unsuitable for legal communications between attorney and client." (Defs. Resp., ECF No. 37, PageID 344.) As there is no established right to email communication, Plaintiff's free speech and retaliation claims cannot stand. (*Id*. at PageID 345.)

The undersigned cannot conclude, as a matter of law, that the statements are protected conduct. As Defendants point out, the cases relied upon do not touch upon the situation here—where the form of communication at issue has been extended to prisoners as a privilege, rather than as a right (like hard copy mail), and a privilege that comes with heavy limitations (Defs. Resp., ECF No. 37, PageID 345.) Yet, the undersigned is not prepared to go as far as Defendants urge. *First*, Plaintiff, not Defendants, is the movant, and as discussed above, it is not necessary to make that determination to deny Plaintiff's motion on the retaliation claim. *Second*, as the *Miles* Court discussed, even if a prisoner does not have a right to a particular form of communication, "he might still have some right to the information so communicated." 2021 U.S. Dist. LEXIS 86556, at *13. Defendants cite no caselaw or other authority stating that the entitlement to information (or the right to transmission of information) is dependent on the medium in which it is sent. Absent such authority, the undersigned is not prepared to essentially grant summary judgment to the non-movants on that ground.

### D. Plaintiff's free speech claim

Plaintiff argues that the undersigned's denial of his free speech claim was contrary to law.[1] Specifically, he claims that the undersigned misapprehended the basis of his claim—not that any messages were redacted or altered, but that the actions taken against him were intended to keep him from criticizing Smith or any CCI employee in future correspondence (Pltf. Objs., ECF No. 33, PageID 323-24.) He wrongly asserts that the undersigned did not consider the evidence presented by Plaintiff. (*Id*. at PageID 324.) He further claims that the Defendants did not dispute any of his material facts, meaning they are deemed admitted, and the undersigned's finding to the

---

[1] While not necessary to the outcome, the undersigned notes that the proper standard of review on appeal from a Report and Recommendations is *de novo*, not contrary to law. Fed.R.Civ.P. 72(a), (b)(3).

contrary was contrary to law. (*Id*. at PageID 324-26, citing *Beard v. Banks*, 548 U.S. 521, 527 (2006); Report, ECF No. 27, PageID 305.) Plaintiff's reasoning is not persuasive, as *Beard* is distinguishable. In *Beard*, the non-movant did not dispute the facts alleged in the motion for summary judgment, but rather cross-moved for summary judgment. 548 U.S. at 527. Here, Defendants did designate their own evidence in opposition (Reg. 75-MAL-01, ECF No. 23-1; Smith Decl., ECF No. 23-2.) This evidence created genuine issues of material fact on several issues, including whether Defendants were advancing a legitimate penological interest in suspending Plaintiff from JPay use. Thus, summary judgment for Plaintiff is inappropriate.

Plaintiff claims that the Magistrate Judge erred in finding that there was a dispute as to whether Plaintiff's thirty-day JPay suspension actually constituted censorship, as Plaintiff was able to communicate via regular mail (Pltf. Objs., ECF No. 33, PageID 326, quoting Report, ECF No. 27, PageID 305.) Plaintiff argues that it is undisputed that email was his only means of communicating with his aunt and with counsel, meaning that it was undisputed that his First Amendment right to communication was infringed (*Id*. at PageID 327-29.)

Plaintiff's argument is misplaced. He cites no caselaw, and the Court is unaware of any, suggesting that the First Amendment right to communicate freely means a right to communicate through a particular medium, regardless of whether that is the only means of communication with a particular person. Moreover, as Defendants point out, there is no indication that Defendants did—or even could—take away his ability to communicate via regular mail (Memo. in Opp., ECF No. 23, PageID 264, citing 75-MAL-01, ECF No. 23-1, PageID 267-69.) In the absence of such legal authority, and viewing the facts in the light most favorable to Defendants, summary judgment is inappropriate.

## IV. Conclusion

For the foregoing reasons, it is recommended that Plaintiff's Objections (ECF No. 33) be OVERRULED, Defendants' Objections (ECF No. 34) be SUSTAINED, Plaintiff's Motion for Summary Judgment (ECF No. 22) be DENIED, and that Smith be GRANTED qualified immunity and be dismissed with prejudice from the case. Plaintiff's official capacity claims against Shoop should proceed to trial.

February 26, 2022.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #