**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ROBERT W. BETHEL,**

          **Plaintiff,**                    **Case No. 2:20-cv-5275**
                                            **JUDGE EDMUND A. SARGUS, JR.**
      **v.**                              **Magistrate Judge Michael R. Merz**

**WARDEN CHILLICOTHE**
**CORRECTIONAL INSTITUTION, *et al.*,**

          **Defendants.**

## OPINION AND ORDER

      This matter is before the Court on Plaintiff Robert W. Bethel's Motion for Reconsideration. (ECF No. 59.) On March 22, 2022, the Court adopted the Magistrate Judge's Report and Recommendation denying Plaintiff's Motion for Summary Judgment and granting Defendant Brandi Smith qualified immunity. (ECF No. 50.) For the following reasons, Plaintiff's Motion for Reconsideration is **DENIED**.

### I.      Background

      As stated in the Court's Opinion and Order adopting the Magistrate Judge's Report, this case arises out of Defendants' censorship of Plaintiff Robert Bethel's electronic mail at the Chillicothe Correctional Institution ("CCI"), where Bethel is a capital inmate. (ECF No. 50.)

      In July 2020, Bethel attempted to send Rachel Troutman, the attorney representing him in his petition for writ of *habeas corpus*, nine emails containing inflammatory language regarding CCI staff members. (Ex. 4, ECF No. 22-1.) Specifically, Plaintiff referred to them as "racist assholes," supporters of the Ku Klux Klan, and "real gangsters." (*Id.*) Soon after sending this series of emails, Plaintiff received several notices informing him that his emails were being censored for, among other reasons, "[u]se of racial slur words and wrongful allegations of CCI staff." (Ex. 5,

ECF No. 22-1.) These nine emails, although censored, were later released in full to Ms. Troutman. (Compl. ¶ 46, ECF No. 1; Ex. 6, ECF No. 22-1.)

In addition to the censorship notices, Plaintiff also received a conduct report from Defendant Brandi Smith, the mailroom supervisor. (Ex. 7, ECF No. 22-1.) Smith states in the report that Bethel violated multiple rules for "[d]isrespect to an officer, staff member, visitor or other inmate; Any violation of any published Institutional rules, regulations or procedures." (*Id.*) Smith further notes that "[Bethel] continues to make false allegations against CCI staff and appears to be 'testing' the JPay rules and regulations on what will be censored or sent to security." (*Id.*) Following the issuance of this conduct report, CCI suspended Bethel's JPay access for 30 days. (Bethel Decl. ¶ 17, ECF No. 22-1.)

CCI's handling of Bethel's electronic mail and his subsequent suspension prompted Bethel to file this action on October 8, 2020. Bethel, proceeding *pro se*, claims that Defendants Smith and CCI Warden Timothy Shoop violated his First Amendment right to free speech by unconstitutionally censoring his outgoing email and retaliating against him for exercising his rights. (Compl., ECF No. 1.) On August 6, 2021, Plaintiff moved for summary judgment (ECF No. 22), to which the Magistrate Judge recommended that the Court deny Bethel's motion and grant Defendant Smith qualified immunity. (ECF No. 43.) On March 22, 2022, the Court adopted the Magistrate Judge's Report and Recommendation. (ECF No. 50.)

Following the Court's adoption of the Magistrate Judge's Report and Recommendation, Bethel filed a Motion for Reconsideration. (ECF No. 59.) In his motion, Bethel asks the Court to reconsider both the denial of his summary judgment motion and the granting of Defendant Smith's qualified immunity.[1] (*Id.*) It is this motion that sits before the Court.

---

[1] Bethel has supplemented his Motion for Reconsideration with two subsequently filed notices of additional authority. (ECF Nos. 60, 61.)

## II.     Legal Standard

A district court has "inherent power to reconsider interlocutory orders," and "may modify, or even rescind, such interlocutory orders." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 945 (6th Cir. 2004). Motions for reconsideration are "[g]enerally . . . only warranted when there is . . . a need to correct a clear error or prevent manifest injustice." *Ne. Ohio Coalition for Homeless v. Brunner*, 652 F.Supp.2d 871, 877 (S.D. Ohio 2009) (quoting *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F.App'x 949, 959 (6th Cir. 2004)). Moreover, to discourage the filing of endless motions for reconsideration and in the interest of "grant[ing] some measure of finality even to interlocutory orders . . . courts should grant motions for reconsideration sparingly" and "only if the prior decision appears clearly to be legally or factually erroneous." *King Lincoln Bronzeville Neighborhood Ass'n v. Blackwell*, No. 2:06-cv-0745, 2009 U.S. Dist. LEXIS 120011, at *4 (S.D. Ohio Dec. 22, 2009). Such motions are "not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." *Brunner*, 652 F. Supp. 2d at 877.

## III.     Analysis

Plaintiff Bethel's Motion for Reconsideration takes issue with two decisions from the Court: (1) the Court's denial of Bethel's summary judgment motion, and (2) the Court's finding that Defendant Smith is entitled to qualified immunity. The Court will address each decision, and Bethel's arguments supporting reconsideration of each decision, in turn.

### A.     First Amendment Claims.

The Court held in its March 22, 2022 Order that Bethel does not have a constitutional right to send uncensored email from prison containing vulgar language about prison staff. (ECF No. 50, at 5.) Given the absence of a First Amendment violation, the Court further held that Bethel was

not entitled to summary judgment on his retaliation claim. (*Id.* (quoting *Bristow v. Amber*, No. 2:12-cv-412, 2012 U.S. Dist. LEXIS 75989, at *9 (S.D. Ohio May 31, 2012) ("If there is no exercise of First Amendment rights, there can be no retaliation based on the exercise of First Amendment rights.").)

First, Bethel correctly notes that while the Magistrate Judge declined to answer whether Bethel's outgoing emails constituted protected conduct, this Court reached the issue, answering in the negative. (Mot. for Reconsideration, ECF No. 59-1, at 1–2.) That this Court made a finding in addition to those made in the Magistrate Judge's Report and Recommendation does not require the Court to grant Bethel's motion unless the Court's finding was contrary to either the law or the facts—and it was not.

The Magistrate Judge refrained from opining on whether Bethel's email use constituted protected conduct because Defendants provided no authority for this proposition. (ECF No. 43, at 8.) In contrast, the Court's March 22, 2022 Order identified multiple cases aligning with Defendants' position, including a recent decision from this very same Court. (ECF No. 50, at 4–5 (citing *Bristow*, among other cases).) Bethel, however, argues that the Court's reliance on *Bristow*, as well as the other cases cited suggesting that Bethel does not have a viable First Amendment claim, is misplaced.

Bethel seeks to distinguish *Bristow* from this action by viewing in isolation one segment of a sentence from the opinion: "The Court is unable to find any authority that requires a prison to permit an individual outside the prison to communicate with inmates via email…" (Mot. For Reconsideration, ECF No. 59-1, at 3 (quoting *Bristow*, 2012 U.S. Dist. LEXIS 75989, at *6).) Bethel, relying on this language, argues:

> [P]laintiff's claim has never been that the prison was "required" to provide him access to electronic mail, as was the plaintiff's claim in *Bristow*. Rather, Plaintiff's

claim is as the Magistrate Judge explained it: that First Amendment "entitlement to information (or the right to transmission of information) is [not] dependent on the *medium* in which it is sent."

(*Id.* at 3 (emphasis added by Bethel).) While Bethel builds his argument with the cited language, consideration of this language—in context—reiterates why this Court cited to it approvingly when rejecting Bethel's First Amendment claims:

> The Court is unable to find any authority that requires a prison to permit an individual outside the prison to communicate with inmates via email, let alone any authority that requires instantaneous forwarding and delivery of email communications. Indeed, courts considering whether inmates have a First Amendment right to access email have consistently concluded that they do not. *See, e.g.*, *Grayson v. Fed. Bur. of Prisons*, No. 5:11cv2, 2012 U.S. Dist. LEXIS 13839, at *3 (N.D. W.Va. Feb. 6, 2012) ("[P]risoners have no First Amendment constitutional right to access email."); *Rueb v. Zavaras*, No. 09-cv-02817, 2011 U.S. Dist. LEXIS 22622, at *6 (D.Colo. Mar. 7, 2011) ("[I]nmates have no established First Amendment right to access email."); *Holloway v. Magness*, No. 5:07cv88, 2011 U.S. Dist. LEXIS 6190, at *7 (E.D. Ark. Jan. 21, 2011) ("[A]ssuming that the free speech clause of the First Amendment requires prisons to permit communication between prisoners and persons outside the prison,... the First Amendment [does not require] that the government provide telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances; the First Amendment is a limit on the exercise of governmental power, not a source of positive obligation[.]").

*Bristow*, 2012 U.S. Dist. LEXIS 75989, at *6-7. Put simply, *Bristow* held that inmates do not have a constitutional right to communicate via email. Thus, the existence of First Amendment protection for certain prison communications *does* depend on the medium in which they are sent. *Compare Procunier v. Martinez*, 416 U.S. 396 (1974) (noting that prisoners have a First Amendment right to send mail), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989) *with Holt v. Bright*, No. 4:19CV01438, 2020 U.S. Dist. LEXIS 6496, at *6 (N.D. Ohio Jan. 15, 2020) ("[W]hile prisoners have a First Amendment right to communicate with the outside world, they do not have a constitutional right to a particular form of communication, such as access to email[.]")

Therefore, applying *Bristow's* holding to Bethel's claim—a claim predicated on a constitutional right to communicate via email—was not legally erroneous.

In addition to *Bristow*, Bethel also criticizes two other cases cited by this Court: *Leonard v. Nix*, 55 F.3d 370 (8th Cir. 1995) and *Benning v. Dozier*, No. 5:18-cv-00087-TES-CHW, 2021 U.S. Dist. LEXIS 82957 (M.D. Ga. Apr. 30, 2021). (Mot. for Reconsideration, ECF No. 59-1, at 2–5, 7.) Bethel argues that *Leonard* stands for the proposition that "mail containing derogatory comments regarding prison staff are protected under the First Amendment when an inmate only knows that the 'letter might be read,' but that the right was not available to an inmate who does a deliberate act to draw attention to the letter." (*Id.* at 2.) While the Court does not dispute Bethel's reading of *Leonard*, the Court's analysis remains unchanged. Precedent from this Court holds that Bethel does not have a constitutional right to communicate by email; a non-binding Eighth Circuit decision solely involving communication via letters will not disturb the Court's March 22, 2022 Order.

As for *Benning*, Bethel misreads the importance that this Court places on the case. Bethel reads the Court's Order to mean that the *Benning* court held that "sending uncensored electronic mail from prison that contains vulgar language about prison staff is not protected by the First Amendment." (Mot. for Reconsideration, ECF No. 59-1, at 5.) But this is not why the Court cited *Benning*. *Benning*, as relied on by this Court, stands for the proposition that prisoners "have a right to access communication, not a right to uncensored access to a specific form of communication such as email." (ECF No. 50, at 4.) Because Bethel's suit argues for uncensored access to a specific form of communication (JPay), *Benning* suggests that the First Amendment does not protect such access. This proposition from *Benning*, when applied to the present facts, further confirms the Court's conclusion that the First Amendment does not protect Bethel's outgoing emails. And to

6

the extent that *Benning* may conflict in any respect with the Court's Order, *Benning* is merely persuasive authority arising from a prison's decision to censor *and prevent delivery of plaintiff's emails*. *Benning*, 2021 U.S. Dist. LEXIS 82957, at *2. As such, the Court's reliance on *Benning* was not legally erroneous.

Next, Bethel attempts to re-litigate his summary judgment motion by directing the Court's attention to several cases that neither he nor the Court cited in any previous filings or orders. Bethel makes much of *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). (Mot. for Reconsideration, ECF No. 59-1, at 6–7; First Suppl. Authority, ECF No. 60-2, at 2–3.) There, the Sixth Circuit modified the district court's order awarding plaintiff inmates' request for a preliminary injunction enjoining defendants from implementing a telephone system in which prison employees monitored inmate phone calls and limited the number of individuals that inmates could call. *Washington*, 35 F.3d at 1095. After recognizing that the defendants' restrictions on the inmates' telephone use implicated their First Amendment rights, the court opted to modify, rather than affirm, the district court's preliminary injunction because the defendants, following the district court's decision, implemented new regulations that largely remedied the district court's First Amendment concerns. *Id.* at 1100.

Critical to Bethel's argument, and not insignificant to the *Washington* court's analysis, is the following declaration: "there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and . . . such use is protected by the First Amendment." *Id.* Because this language indicates that the First Amendment protects an inmate's telephone use, Bethel argues that such protection should also apply to email communications. In essence, Bethel argues that the reasoning undergirding First Amendment protection of certain mediums (e.g., postal mail or telephone use) should extend to email use. (Mot. for Reconsideration,

ECF No. 59-1, at 7.) But the law in this district is clear: inmates do *not* have a First Amendment right to communicate by email. *Bristow*, 2012 U.S. Dist. LEXIS 75989, at *2-3. The Court will not extend First Amendment protection to a new medium at the expense of prior precedent.

In a similar vein as *Washington*, Bethel asks the Court to examine *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011)—a Supreme Court decision in which the Court, on First Amendment grounds, struck down a California statute restricting the sale or rental of violent video games to minors. Specifically, Bethel relies on the following quotes from *Brown* in asking this Court to extend First Amendment protection to his email use:

> Like the protected books, plays, and movies that preceded them, video games communicate ideas—and even social messages—through many familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium (such as the player's interaction with the virtual world). That suffices to confer First Amendment protection.

(First Suppl. Authority, ECF No. 60-2, at 1 (citing *Brown*, 564 U.S. at 790).) And:

> [W]hatever the challenges of applying the Constitution to ever-advancing technology, 'the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary' when a new and different medium for communication appears.

(*Id.* (citing *Brown*, 564 U.S. at 790).)

This Court agrees with the quoted language, of course. However, reading the *Brown* decision as requiring the Court to extend First Amendment rights to an inmate's email communications is simply a step too far; *Brown's* context, which neither arises from a prison setting nor involves the constitutional rights of the incarcerated, is far too dissimilar from the present facts to provide useful guidance. *See Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001) (although "incarceration does not divest prisoners of all constitutional protections," the "constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large"). This Court followed prior decisions—*in the prison*

*context*—in finding that Bethel does not have a First Amendment right to communicate via email. This finding was not legally erroneous.

In sum, the Court did not commit legal error in determining that Bethel is not entitled to summary judgment on his First Amendment claims. Therefore, the Court denies Bethel's request to reconsider this decision.

## B.    Qualified Immunity.

Bethel also asks the Court to reconsider its decision granting Defendant Smith qualified immunity. (Mot. for Reconsideration, ECF No. 59-1, at 10–11; First Suppl. Authority, ECF No. 60-2, at 4; Second Suppl. Authority, ECF No. 61, at 3–4.) Bethel's position rests entirely on the Court finding that Bethel has a First Amendment right to the non-interference of his email communications. As discussed in Section III.A, the First Amendment does *not* protect Bethel's email use. In the absence of such a constitutional right, Defendant Smith is entitled to qualified immunity. *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established . . . constitutional rights of which a reasonably person would have known.'"). As such, the Court's conclusion that Defendant Smith is entitled to qualified immunity was not legally erroneous.

## IV.    Conclusion

For the foregoing reasons, Bethel's Motion for Reconsideration is **DENIED**. (ECF No. 59.) The Court also recognizes the implications that this decision has on the viability of Bethel's claims; however, the Court will not dismiss Bethel's claim *sua sponte*.[2]

---

[2] The key inquiries into the appropriateness of entering summary judgment *sua sponte* are "whether the would-be losing party was on notice that the claim faced dismissal and had a full opportunity to present facts in support of his claim." *Milner v. Biggs*, No. 2:10-cv-904, 2012 U.S. Dist. LEXIS 48824, at *46 (S.D. Ohio Apr. 6, 2012). In

The Magistrate Judge is **DIRECTED** to issue a Preliminary Pretrial Order in this case.

This case shall remain open.

**IT IS SO ORDERED.**


<u>12/5/2022</u>                                    <u>s/Edmund A. Sargus, Jr.</u>
DATE                                         **EDMUND A. SARGUS, JR.**
                                             **UNITED STATES DISTRICT JUDGE**

---

addition, a court may consider whether the would-be prevailing party moved for summary judgment. *Id.* Here, the Court finds that these considerations weigh against entering judgment *sua sponte* in favor of Defendants.